### Illinois Terminal Railroad Company v. Martha L. Chapin, administratrix.

1. FELLOW-SERVANTS—*who are.* The servants of a common master, whose usual duties bring them into habitual association so that they have opportunity and power to influence each other to the exercise of caution, are fellow-servants within the law.

2. FELLOW-SERVANTS—*how question as to who are, to be determined.* It is for the court to define the relationship of fellow-servants and instruct the jury as to the facts necessary to establish that relationship in a given case, and where there is conflict of evidence as to such necessary facts embodied in the definition, the question is then for the jury. But if the facts admitted or proven beyond dispute, show the relationship to be within the definition given by the court, then the question becomes one of law.

Action on the case for death caused by alleged wrongful act. Appeal from the City Court of Alton; the Hon. JAMES E. DUNNEGAN, Judge, presiding. Heard in this court at the February term, 1906. Reversed, with finding of facts. Opinion filed September 14, 1906.

HENRY S. BAKER and WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

THOMAS F. FERNS, for appellee.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

Appellee, as administratrix, brought suit against appellant to recover damages for the death of Addison G. Chapin, alleged to have been caused by the negligence of appellant. The declaration consists of one count, by which it is alleged that on January 24, 1905, the plaintiff's intestate was in the defendant's employ as a fireman on an engine drawing a passenger train over defendant's railroad; that it was the defendant's duty to keep its tracks in a safe condition for travel; that a certain other engine operated by defendant was negligently left near and upon the track over which the said passenger engine and train was running, causing a collision by which plaintiff's intestate was killed. It is alleged that deceased was in the exercise of due care and that he was not the fellow-servant of the engineer in charge of the other engine. Defendant filed the general issue, and upon trial had, the jury returned a verdict for the plaintiff for $5,000. A motion for a new trial was overruled and judgment rendered on the verdict. The defendant appealed. At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence, defendant asked for a peremptory instruction to find for the defendant. The peremptory instructions were refused, exceptions preserved and error duly assigned.

Appellant company owns and operates a railway between Alton and Edwardsville, a distance of about fifteen miles. Appellant's switch-yard, through which the main track runs, extends from the Alton station eastwardly to a point called Federal. The roundhouse, in which all the engines in use by appellant were housed every night, is situated within or near the switch-yards, and was provided with the usual track and switch connections for the movement of engines into and out of the roundhouse upon the various tracks

in the yards. The main track runs through the yard. West of the roundhouse a track known as No. 2 runs parallel with the main track, and cars upon track No. 2 obstruct the view of engineers operating over the track leading from the main track to the roundhouse. The engineer and fireman of the several engines housed at the roundhouse came together every evening as they turned in from work, and again every morning as they went out with their respective engines, passing over the same switches and tracks, each crew operating the engine in charge with reference to the movement of other engines in charge of other crews. At 7:10 a. m. on the day of the accident, appellee's intestate, with engineer McGee, was due to leave the station at Alton with train No. 60, consisting of an engine and combination passenger and baggage car. He and McGee went to the roundhouse and with their engine proceeded to the station which they left on time with the train for their run to Edwardsville. After they left the roundhouse the engine for No. 8, engineer Mahoney, started out to take up a work train which, by orders received the evening before, was to be operated as an extra from 7:00 A. M. to 7:00 P. M. between Alton and the Illinois Terminal Junction, a station on appellant's road. The tracks were slippery that morning and preparatory to moving No. 8, a heavy train, and before coupling on, Mahoney moved his engine down the road toward the main track in order to sand the rails, and in doing so, backed his engine very near to or partly upon the main track, where it was struck by No. 60, running at the rate of 25 or 30 miles an hour. In the collision appellee's intestate was killed.

From the undisputed evidence in this record we are constrained to hold that appellee is without cause of action and that the trial court erred in refusing the peremptory instruction to find the defendant not guilty. Clearly within the fellow-servant doctrine, as applied in this state, Chapin, McGee and Mahoney

were fellow-servants, and whether the injury may be attributed to the negligence of McGee, engineer of No. 60, or to Mahoney of No. 8, or to the negligence of both combined, the appellant was not liable, and under the facts and the trial court should have so ruled. Though train No. 60 was operating under an order from the train dispatcher, and had a "clearance card" for the run from Alton to Edwardsville, it further appears from the undisputed evidence that within the switch-yards all trains and engines must be moved "expecting to find the track obstructed." This was a rule of the company for the practicable operation and safety of trains in the yards and was known and understood by all the employees brought to the witness-stand in the trial of the case. Under the rule referred to and the manner of operation within the yards, as it appears from the evidence, the relation between the several engine crews was in all respects the same as that of different switching crews operating within the same yards. While within the yard limits, under the rule stated, the crews of No. 60 and No. 8 were fellow-servants, as defined by the Supreme Court in Chicago City Railway Co. v. Leach, 208 Ill. 198, for they were "co-operating at the time of the injury in the particular business in hand," and from the very nature of their business, the moving of trains in and through the switch-yard, their usual duties brought them "into habitual association so that they would have the opportunity and power to influence each other to the exercise of caution." It is said in the Leach case, and other cases there cited, by the court, that "what facts will create the relation of fellow-servant between employees of a common master is a question of law, and whether such facts exist is, ordinarily, a question of fact to be submitted to a jury." In other words, it is for the court to define the relationship of fellow-servants and instruct the jury as to the facts necessary to establish that relationship in a given case, and where there is conflict of evidence as to such necessary

facts, embodied in the definition, the question is then for the jury; but if the facts admitted, or proved beyond dispute, show the relationship to be within the definition given by the court, it then becomes a question of law. Hartley v. C. & A. R. R. Co., 197 Ill. 440. In the case last cited, it is said: "It has long been the settled rule of this court that the servants of a common master, to be co-employees so as to exempt the master from liability on account of injuries sustained by one resulting from the negligence of the other, must be directly co-operating with each other in the particular business, so that their usual duties bring them into habitual association, so that they exercise a mutual influence upon each other promotive of proper caution," thus stating in precise terms the fellow-servant doctrine in both its branches as the same obtains and is applied in this state. Chapin, appellee's intestate, was injured through the negligence of McGee, engineer of No. 60, or Mahoney, engineer of No. 8, or of the combined negligence of both. That both engineers were fellow-servants of deceased under both branches of the rule clearly appears from the undisputed evidence in the case. At the time of the injury they were directly co-operating with each other in the particular business of moving trains or engines within the limits of the switchyard "expecting the track upon which they were moving to be obstructed." The moving of the engines and trains within the yards was the business in which the several crews were engaged, and in the performance of the duty for which they were employed, under the rules adopted by the company, each crew was to operate the movement of its engines in connection with and in reference to every other engine crew. The fact that No. 60 was a regular first-class train, running on schedule with a clearance card, did not affect the relationship between the engine crews, for it is not disputed that all trains, while operating within the yards, were subject

to the same rule respecting their movements. The duty of appellant to provide a clear track and a safe way for the trains did not arise until the yards were cleared. The usual daily duties in the movement of engines in and out of the roundhouse, and upon the tracks within the switchyard, brought the crews together, in habitual association, so that the deceased and the engineers whose negligence caused the injury, might each exercise an influence upon the others. According to the evidence, the several crews, operating engines for the appellant company, were not only together and to a considerable extent personally associated, morning and evening, at the roundhouse, where the engines were stored nightly, but with respect to the different engines in use they performed the duties interchangeably. It is difficult to conceive of a case in which the facts more clearly establish this "habitual association" part of the fellow-servant rule, and there being no dispute of the facts it was the duty of the court to hold, as matter of law, that appellee's intestate was injured by the negligence of a fellow-servant, and that an action for damages would not lie. The judgment of the Circuit Court will therefore be reversed, and as no recovery may be had under the findings of this court the cause will not be remanded.

*Reversed.*

We find as facts, to be incorporated with the judgment, that the injury complained of was caused by the negligence of fellow-servants of appellee's intestate, and that the injury sustained was within the risk assumed by appellee's intestate under his employment as a servant by appellant.